UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANIS GEORGE WAHBA, | Case No. 5:26-cv-02502-MAR |
| Petitioner, | |
| v. | ORDER ON PETITION FOR HABEAS CORPUS |
| ERNESTO SANTACRUZ JR et al., | |
| Respondents. | |

## I.

## **SUMMARY OF ORDER**

On April 20, 2026, Wanis George Wahba ("Petitioner"), by and through counsel, filed a Petition for Writ of Habeas Corpus ("Petition") by a Person in Federal Custody pursuant to 28 U.S.C. § 2241.  ECF Docket Nos. ("Dkt.") 1.  Petitioner argues his detention in Immigration and Customs Enforcement ("ICE") custody without a pre-deprivation hearing violates his Fifth Amendment due process rights and the Immigration and Nationality Act ("INA").  Petitioner seeks release.  Id. at 20–21.[1]  Respondents have filed an Answer in which they affirmatively state that they are not presenting an opposition argument.  Dkt. 8.  For the reasons set forth below, the undersigned **GRANTS** the Petition.

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

## II.

## **BACKGROUND**

Petitioner is a native of Jordan and a citizen of Egypt who arrived in the United States as a minor before 1994.  Dkt. 1 ("Pet") at 6.  While he was still a minor, Petitioner was ordered removed on or about April 4, 1994.  Id.  Petitioner married his wife, a U.S. citizen, in 2010.  They have three U.S. citizen children.  Id. at 7.  Petitioner's wife filed an -130 petition for him, which was approved in 2014.  Id.  Petitioner has complied with all orders for the past 20 years.  Id.  However, while reporting on May 5, 2026, Petitioner was taken into custody to execute his order of removal.  Id.

On May 11, 2026, Petitioner, through counsel, filed the instant habeas petition alleging that his re-detention without pre-deprivation notice and an opportunity to be heard violates the Fifth Amendment's Due Process Clause and that his re-detention without a change of circumstances that establish a significant likelihood of removal in the reasonably foreseeable future is a violation of  APA.   Id. at 9–17.

Petitioner asks the Court to order his immediate release under reasonable conditions of supervision without an ankle monitor, enjoin Respondents from transferring Petitioner outside this District or deporting him pending these proceedings, and order Respondents to return all of Petitioner's personal belongings, including but not limited to, his personal identification and any work permit, social security card and all his identification documents confiscated from him at the time of detention.  Pet at 20–21.

Respondents filed an answer on May 18, 2026.  Dkt. 8, Answer.  Respondents affirmatively state that they are not presenting an opposition argument to the Petition.  Id.  Petitioner filed a reply.  Dkt. 9, Reply.  Thus, the matter stands submitted.

The Court finds that Petitioner's sudden detention—without any meaningful pre-deprivation notice or an opportunity to be heard—violates due process.  Accordingly, the Court orders that the Petition be granted and a writ of habeas corpus

be issued requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a hearing.

## III.

## LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' "). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Bellew v. Gunn, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## IV.

## DISCUSSION

Detention, release, and removal of individuals ordered removed is governed by 8 U.S.C. § 1231(a). Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). A noncitizen shall be removed within 90 days of the removal order, subject to a potential 90-day extension. 8 U.S.C. § 1231(a)(1). However, once that period passes, and the noncitizen is not removed, they "shall be subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). The noncitizen may be detained beyond the removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." Id. § 1231(a)(6).

It is well-established, however, that the government's statutory authorization to detain an alien beyond the removal period does not permit indefinite detention. Zadvydas, 533 U.S. at 692, 699. In cabining the period of detention permissible under 8 U.S.C. § 1231(a)(6) and the Fifth Amendment, the Supreme Court recognized a presumption that detention for up to six months is reasonable. Id. at 701. After six

months, however, and upon a showing by the alien that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to rebut that showing or release the alien from custody. Id.; see also Nadarajah v. Gonzales, 443 F.3d 1069, 1076–78, 1080 (9th Cir. 2006).

Sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations govern the release of noncitizens pursuant to 8 U.S.C. § 1231(a)—and the revocation of that release. Both sections allow release to be revoked when a noncitizen violates the conditions of their release. 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1).[2] Section 241.13(i) allows DHS to revoke a noncitizen's OSUP and re-detain them "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Both sections establish certain required process for the revocation of release. Upon such revocation, the noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to [] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." Id. §§ 241.4(l)(1), 241.13(i)(3). If the noncitizen continues to be detained after the informal interview, they shall be scheduled for the "normal review process," which begins with notification of a records review and scheduling of an interview, "which will ordinarily be expected to occur within approximately three months after release is revoked." Id. §§ 241.4(l)(3); 241.13(i)(2) ("[I]f the [noncitizen] is not released from custody following the informal interview . . . the provisions of § 241.4 shall govern the [noncitizen]'s continued detention pending removal."). "In simpler terms, in order to revoke release, the

---

[2] Section 241.4(l) also allows revocation "in the exercise of discretion when, in the opinion of the revoking official" certain other conditions are met, and section 241.13(i) also permits revocation "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Id. §§ 241.4(l)(2), 241.13(i)(2).

government must notify the noncitizen of the **reason** for the revocation and give them both an ***informal and formal interview***." <u>Delkash v. Noem</u>, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025).

Additionally, it is well-established that the Government is prohibited from removing a noncitizen to any third country where they may be persecuted or tortured. <u>See</u> 8 U.S.C. § 1231(b)(3)(A); <u>Ramos v. Noem</u>, No. 5:26-CV-00064-MEMF-ADS, 2026 WL 303536 (C.D. Cal. Feb. 4, 2026). "If [noncitizens] would face persecution or other mistreatment in [a third country], they have a number of available remedies: asylum; withholding of removal; relief under an international agreement prohibiting torture; and temporary protected status." <u>Jama v. Immigr. & Customs Enf't</u>, 543 U.S. 335, 348 (2005) (internal citations omitted).

By the same token, it is well-established that due process requires that, at the very least, a noncitizen being removed to a third country be given an opportunity to be heard on whether they are subject to persecution or torture in that third country. <u>Ramos</u>, 2026 WL 303536, at *6. In fact, the Ninth Circuit has held that failing to provide a noncitizen an opportunity to address his fear of persecution in the country in which he is being removed is a due process violation: "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both [immigration] regulations and the constitutional right to due process." <u>Id.</u> (citing <u>Andriasian v. I.N.S.</u>, 180 F.3d 1033, 1041 (9th Cir. 1999)).

**B.    ANALYSIS**

The Court finds that Petitioner has demonstrated that the government did not comply with the process laid out in sections 241.4(l)(1) and 241.13(i)(3). First, Petitioner was never notified of the reasons for revocation of his release. Dkt. 1 at 12. "Petitioner must be told <u>what</u> circumstances had changed . . . in order to meaningfully respond to the reasons and submit evidence in opposition," as allowed under sections 241.4(l)(i) and 241.13(i)(3). <u>See</u> <u>Hashemi</u>, 809 F. Supp. 3d at 1035 (citing <u>Sarail A. v.</u>

Bondi, 803 F. Supp. 3d 775, 2025 WL 2533673, at *10 (D. Minn. 2025); Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025)). Notice must provide real, specific, concrete information that a noncitizen could actually respond to. See id. Particularly, although Petitioner was apparently detained to execute his removal, Petitioner was not notified of changed circumstances that would establish a significant likelihood that he may be removed in the reasonably foreseeable future. Here, there is no contention that Petitioner was ever notified of any changed circumstances warranting his detention. See Answer.

Second, there is no evidence that Petitioner was afforded a meaningful informal or formal interview as required by 8 C.F.R. 241.13(i)(3); see Hashemi, 809 F. Supp. 3d at 1035 (citing Sarail A., 2025 WL 2533673, at *10; Esmail, 2025 WL 3030590, at *6); 8 C.F.R. § 241.13(i)(3) ("afford[ing] [noncitizens] an opportunity to respond to the reasons for revocation," including an opportunity to "submit any evidence or information that he . . . believes shows there is no significant likelihood he… [will] be removed in the reasonably foreseeable future")). Petitioner's arrest and re-detention were in violation of the procedures required under 241.4(l)(1) and 241.13(i)(3) and, thus, invalid.

The government's failure to provide Petitioner a meaningful notice of revocation and informal interview is in clear violation of the requirements of sections 241.4(l)(1) and 241.13(i)(3). A growing number of courts—including this one—have unequivocally found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release. See Delkash, 2025 WL 2683988, at *5–6 (collecting cases). "These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." Id. at *6. "Rules matter. Hearings matter." Id. at *1.

Additionally, Petitioner asserts, and Respondents do not contest, that Petitioner was detained for six months in 2006 after a final order of removal was issued against him. Pet. at 79. As discussed above, Petitioner has not been removed in the 20 years

since that time.  Therefore, Petitioner has established there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.  Respondents have not met their burden to rebut the presumption.  See Answer.  Accordingly, Petitioner's prolonged detention is unreasonable and unconstitutional.

Finally, the Court notes that it will entertain an application by Petitioner requesting an award of reasonable attorney's fees and costs under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action.  See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## IV.

## **ORDER**

For the reasons stated, the court **GRANTS** the Petition and **ORDERS** Respondents to:

(1) release Petitioner from custody immediately and with the same conditions in place at the time of his unlawful re-detention, and return all property taken from him during his arrest and processing into detention including but not limited to his personal identification, employment authorization document, social security card, and all identification documents;

(2) not re-detain Petitioner unless he receives process as required under 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3), any other applicable statutory and regulatory procedures, and the Due Process Clause of the Fifth Amendment;

(3) not re-detain Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal;

(4) not remove or attempt to remove Petitioner to a third country unless Respondents adhere to the following:

(a) provide Petitioner a minimum of ten (10) days to raise a fear-based claim for protection prior to removal;

(b) if Petitioner does assert a fear-based claim, provide Petitioner a meaningful opportunity to be heard on his fear-based claim; and

(5) file a statement with the court within one business day of Petitioner's release, attesting to Respondents' compliance with this Order.

Dated:  May 28, 2026

_____

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge